case number 22-1226 Riverdale Mills Corporation petitioner versus Secretary of Labor. Mr. Vance for the petitioner, Ms. Bonfiglio for the respondent. Mr. Vance, good morning. Good morning, your honors. I please support Travis Vance with Fisher & Phillips. My colleague Sharon Saul and I represent Riverdale Mills Corporation. The president for Riverdale is their internal counsel, Cyril Means, and President Jim Knott. There are three OSHA citations at issue here, and with respect to each of those citations, the Administrative Law Judge made findings of fact based on assumptions and evidence that was either not admitted at trial or should have not been admitted. The question today for this court is will it permit an Administrative Law Judge, and then as upheld by the OSHRAC Commission, to make emphases, assumptions, and conclusions without factual basis to uphold three citations where OSHA failed to marshal the evidence at trial required to prove. As this court may know, there's two cases at issue here. There's one related to safety issues and another related to health issues. One of the first, the first citation I'm going to address is a safety issue that is respect to the spindles at Riverdale's facility. In the citation for failure to do certain annual certifications concerning a big spindle at the facility, but at trial the only evidence that was demonstrated or marshaled related to the C spindle. There was absolutely no evidence that the big spindle as cited was the same as the C spindle. In fact, OSHA's own inspector noted there were three spindles on the line at Riverdale, and it that the cited big spindle was in fact the same as the C spindle. Now let me ask about that please. It seems like the record is talking about one specific spindle, and the citation refers to one specific spindle. It just seems almost absurd that the citation would have referred to a specific spindle that is different than the one specific spindle that the entire record is on. Yes, Your Honor, I tend to agree with you, but with respect to the burden of proof, OSHA would have that at trial, and here the evidence was clear that there were three different spindles on this particular line, and there was never any evidence to demonstrate that the C spindle, which was the spindle that was noted on the lockout tagout sheet that did come into evidence, there was no evidence to demonstrate that was the same as the big spindle that was cited. What if the citation had just said a spindle? Well, I think that would be a different case, but I think in that case OSHA would have the burden to show that the spindle cited in the work. Don't you think we could infer that a citation that says the spindle is referring to the only spindle that was discussed in the record? Were there other spindles discussed, Your Honor? If you look at even the compliance officer's testimony, they talk about three different spindles and actually each of the spindles having a different lockout tagout procedure, and the Secretary on Appeal has made the new argument that, well, they work in that exposure, but our position here is, and our request of this Court, is to make OSHA meet its burden by demonstrating at trial in front of a finder of fact that, in fact, what the company was cited for is what existed in the workplace. And here OSHA would have to demonstrate there was an actual exposure to employees because of a failure to not do an annual certification for lockout tagout on the big spindle, but at trial there was never any evidence to demonstrate that that actual spindle caused any exposure. And I overstated it a little bit when I said there was nothing in the record about the other spindles, but is it true that there was nothing in the record about any kind of mistakes that were made with regard to the, let's call them, small spindle? No, there was no, if this is what you're asking, Your Honor, there was no demonstration that there was an error with the other spindles as far as meeting the standard. That is correct. The citation focused on the big spindle, but at trial there was an issue with the C spindle because that was the only spindle OSHA could demonstrate that had been serviced within a year prior to the inspection, so therefore there might have been a hazard. But the issue with OSHA's case is they didn't cite for that spindle, they cited for the big spindle and never crossed the bridge to show the big spindle was the same as the C spindle. And our issue with the ALJ's decision is she bridged that gap for OSHA without any evidence being presented that would allow her to do so. And the same issue applies, Your Honors, for the safety data sheets concern. That issue is whether or not the employer provided the safety data sheets or provided access to OSHA of the safety data sheets within 15 working days or would have noted why they couldn't provide it within a certain amount of time. But the issue here and what the same bridge that the ALJ filled for OSHA without evidence was that OSHA, there's no evidence in the record that shows that OSHA specifically asked for, you know, chemical A, chemical B, chemical C of a safety data sheet and she filled in the gaps. The administrative law judge filled in the gaps as to what OSHA actually requested. So our position is the same there for the safety data sheets as it is with the spindle is that we're asking this court to not allow the ALJ to uphold citations against a family-owned business where the government has failed to meet the requirements of that citation without any evidence in the record. And so with respect to the safety data sheets, the Secretary has not addressed the fact that at the opening conference in that specificity as to which chemicals the safety data sheets were requested for and more importantly the follow-up email that was sent from the OSHA inspector to Riverdale was unfortunately sent to the email address of a deceased former president of the company and of course there was no response to that. That email had some specificity to it but the actual request from OSHA to the company never addressed give us this safety data sheet, give us this safety data sheet, give us this safety data sheet. And more importantly the testimony at trial was that Ms. Hart, the inspector, noted that she was provided the safety data sheets for chemicals four, five, and six on the safety, the chemical key that was in the record. But at trial they tried, OSHA tried to say that it was other safety data sheets that were not provided but those were never specifically requested and again our position as the Administrative Law Judge is trying to bridge that gap for the government without any facts in the record. With respect to the final citation, Your Honors, that relates to the hazard communication training to one single employee. The only evidence in the record on that particular citation is a out-of-court hearsay statement from a non-manager of the company. It was permitted in without the company being permitted to cross-examine that witness. He did not appear, he could not be located by the government. It was hearsay. We think that it should have been excluded under Rule 403 and even if not excluded on its face we think that it meets his testimony in that statement, specifically notes that he was given the training that's required by the standard. Your Honor, I see that my time is up and I will reserve my remaining time. Thank you very much. Ms. Bonfiglio. Good morning, Your Honors. May it please the Court, my name is Anne Bonfiglio and I represent the Secretary of Labor. The issues in this case are primarily factual and therefore governed by substantial evidence standard which requires something less than a preponderance. Here, the Commission decision is adequate to support the, here the Commission decision must be upheld if a reasonable mind would find that the evidence in the record is adequate to support the ALJ's findings and the record is adequate to support the findings for the three issues in this case and I'll take them in the same order that Mr. Vance did. So, starting with the lockout tagout standard, OSHA's lockout tagout standard protects against the unexpected energization of machines and it requires that employers establish and use procedures to put locks and tags on machines to stop that energization and to conduct annual periodic inspections of the employees who would performing those procedures and that's the issue here. The purpose of the periodic inspection requirement is to ensure that workers are competent in lockout tagout and that they're protected from the hazard of performing lockout tagout without knowing the correct procedures to work on that machine and Riverdale does not dispute the ALJ's findings that they violated this requirement, they just dispute the exposure element and here the record shows that Borden was actually exposed to performing lockout tagout without having received a periodic inspection via the lockout tagout log from April 2019 which shows that he performed lockout tagout on the C spindle and Riverdale doesn't dispute the authenticity of the log or Borden's testimony about performing lockout tagout on that date, they argued that the C spindle was not the big spindle and that there's no evidence in the record to support that but that's not correct. So, Borden testified that the lockout tagout procedure that's listed in the citation RMC-022 for the big spindle was the procedure that advised of the hazards associated with the C spindle and that was the procedure he referenced when performing lockout tagout on the C spindle. Additionally, the secretary requested all lockout tagout procedures for Riverdale's operations and received just one lockout tagout procedure for the spindle. So, that lockout tagout procedure RMC-022 in the citation was the only procedure that Borden could have referenced when performing lockout tagout on the C spindle. Finally, if you look at the video and the photographs of the facility, you'll see that you have one big spindle that is a terminal point on the coding line and you have two smaller spindles that are set aside. It's unreasonable to suggest that those spindles aside from the coding line are the C spindle and considered together, this documentary evidence shows that the record was adequate to support Borden's testimony and the ALJ's finding that there had been exposure to the lack of periodic inspection. Why would it be unreasonable to think that one of the smaller spindles was the C spindle? Because the smaller spindles, if you look at the photo, they're the coding line. If you're able to view the video, you'll see that the mesh travels through a series of machines and the last machine that receives the mesh is this big spindle, spindle number one, or the main spindle. I had a number of different names that were referred to during the trial and the small spindles were not in use. They were off to the side. So, to say that the coding line was a spindle not attached to the coding line just doesn't seem reasonable and especially considered with Borden's testimony that there was one procedure and that was the procedure reference. I'll also just note that Mr. Vance has mischaracterized the COSHA's testimony here. What the COSHA said was that there are three spindles but there was only a unique procedure offered for the spindle machine. The other procedures reference referred to other machines on the coding line but not the other spindles. Refer to other what? Other machines on the coding line. A priming machine or a wash machine but not a different spindle. He said a minute ago that each of the three spindles has its own lockout tagout procedure. Is that right or not? That's not reflected in the record. So, when the secretary requested all lockout tagout procedures, only one was produced for a spindle which was the big spindle and when COSHA, when the COSHA, the compliance officer was asked about this, he said there was a unique procedure for the spindle. So, it's important. So, considering his testimony as provided, there was just one procedure for the spindles. Moving to the issue of the safety data sheets for the HASCON standard, the ALJ properly found that Riverdale did not provide the safety data sheets in a timely fashion as required under the standard. Notably, after at the closing conference, Riverdale still failed to produce safety data sheets for chemicals two and three, chemicals on the coding and galvanizing line. The COSHA is not required under the standard to specify chemical by chemical what they are seeking. They may request all safety data and here the record shows that the request has always been for all safety data sheets on the coding and galvanizing line and you can see that in Exhibit 49 which is Area Director Hoy's email prior to Investigator Hertz' inspection where she references all chemicals in Riverdale's coding and galvanizing line operations. Can I ask a question about the governing legal standard? We have any number of cases saying that citations are reviewed under this four-factor test which includes employee access and employer knowledge and everyone seems to take that as a given. I understand how you get that test for serious violations. I don't understand how you get that test for non-serious violations and this is a non-serious violation. The statute says you have to follow a safety standard. The safety standards don't talk about employee access or employer knowledge and there's just kind of a square peg round hole problem. What does it mean to say employee access where you're talking about failure to provide a record in a timely fashion? So why do we consider those elements at all for this non-serious violation? So for the non-serious violations, Your Honor, the access element I believe and this is in reference to a footnote in the Secretary's brief is actually dropped so it is only a three-part test for the record-keeping violations or the non-serious record-keeping violations which this is. It drops employee access? I believe so. So we're looking here at the violation and we're What is knowledge? How does knowledge come in? So here Riverdale knew that they did not provide the safety data sheets that were requested. No, I know but why is it relevant? It's so in the OSHA cases you're looking at knowledge of the violative conditions so here we would just be saying the employer knew of the request and they did not provide a response to that request and they were aware of that. There wasn't some inadvertence that led to them. I understand your position that any knowledge requirement is met. I'm not sure you would have to meet it. It's possible for this case we're really focusing on the violation so and so here right the violation was established by them failing to provide the safety data sheets for chemicals two and three and I'll just note that even if the ALJ had erred in not crediting Riverdale's claim that they believed the scope of this request was only for air contaminants chemical five which is listed on the citation is an air contaminant under OSHA's air contaminant standard and should have been been provided if that was what they did indeed understand. Quickly addressing the hearsay point your honor it's well established under commission case law that statements to compliance officers are non-hearsay under 801 D2D. The reason for that is because employers know what their employees are saying and can offer rebuttal evidence as Riverdale did do in this case. We had an eight-day trial and attorney means was present when the statement was made. They had a simple opportunity to respond. I see my time is up. All right, thank you. Thank you. Mr. Vance, I think you have some time remaining. Your honor, just real briefly with respect to your question your honor with respect to employer knowledge at trial Ms. Horne, the inspector was asked and with respect to missing safety data sheets who do not know that any manager or supervisor at Riverdale Mills was aware that any safety data sheets had not been produced at OSHA correct a response I do not know what they were aware of. With respect to the position offered by counsel on the June 17, 2019 email exhibit R49 talking about all safety data sheets with powder coating and galvanizing operations we believe that was misinterpretation of that. It actually is an email to Riverdale's prior counsel from the area director for OSHA that says I appreciate that attorney Anastasopoulos provided all the safety data sheets associated with the powder coating galvanizing operations at Riverdale Mills we will be in touch. So there was a reference to the power coating and galvanizing operations but only in the context that OSHA is acknowledging that all the safety data sheets had been provided and at that point going forward there was only a generic request for safety data sheets when OSHA shows up looking for air contaminants the request was all safety data sheets not previously provided and there was never a request from OSHA for specific chemicals. Finally with respect to the spindles question your honor the testimony from compliance officer Hrabowski he testified that he did not know quote if the same procedure for the big spindle lockout can be used to lock out a different machine because there were multiple energy control procedures that were provided so our position is the testimony your honor was that there was no evidence that the C spindle lockout tagout procedure would work for the big spindle or vice versa. We respectfully request that this court reverse the administrative law judge as upheld by the OSHA RAC Commission's decision. Thank you.
judges: Henderson, Katsas, Walker